In the Matter of the Claim of EDWARD HEANEY, Respondent, against P. J. CARLIN CONSTRUCTION COMPANY et al., Appellants.

STATE INDUSTRIAL BOARD, Respondent.

94

(Argued October 1, 1935; decided November 19, 1935.)

*William B. Davis* and *E. C. Sherwood* for appellants. At the time claimant received his injuries he was a passenger on a steam vessel on navigable waters of the United States; his rights are governed solely by the maritime law; the Workmen's Compensation Law (Cons. Laws, ch. 67) has no application, and the State Industrial Board has no jurisdiction. (*The Moses Taylor* v. *Hammons*, 71 U. S. 411; *The Normannia*, 62 Fed. Rep. 469; *The Willamette Valley*, 71 Fed. Rep. 712; *The Western States*, 151 Fed. Rep. 929; *Sweeting* v. *Steamer Western*

*States*, 210 U. S. 433; *The Minnetonka*, 146 Fed. Rep.
509; *Chicago Transit Co.* v. *Moore*, 259 Fed. Rep. 490;
*The Arabic*, 50 Fed. Rep. [2d] 96; *Oceanic Steam Nav.
Co.* v. *Corcoran*, 9 Fed. Rep. [2d] 724; *Crowell* v. *Benson*,
285 U. S. 22; *Southern Pacific Co.* v. *Jensen*, 244 U. S.
205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149;
*The Lottawanna*, 21 Wall. 558; *Chelentis* v. *Luckenbach*,
247 U. S. 372; *Spencer Kellogg & Sons* v. *Hicks*, 285
U. S. 502; *Matter of Phœnix Co.* v. *Staten Island Ry.
Co.*, 251 N. Y. 127; *Matter of State Treasurer* v. *Wielandt*,
254 N. Y. 609; *Panama R. R. Co.* v. *Johnson*, 264 U. S.
375; *Leary* v. *United States*, 81 U. S. 607; *Reed* v. *United
States*, 78 U. S. 591; *Great Lakes Dredge & Dock Co.* v.
*Kierejewski*, 261 U. S. 479; *Robins Dry Dock & Repair
Co.* v. *Dahl*, 266 U. S. 449.)

*John J. Bennett, Jr., Attorney-General* (*Roy Wiedersum*
and *Henry Epstein* of counsel), for State Industrial
Board, respondent. The rights of claimants under the
Workmen's Compensation Law derive, not from tort,
but from contract. Unless the contract is maritime, and
the Workmen's Compensation Law, if applied, works
material prejudice to the characteristic features of the
general martime law, or interferes with the proper har-
mony and uniformity of that law in its international and
interstate relations, there is no Federal, constitutional or
statutory inhibition against it. (*Matter of Doey* v. *How-
land Co.*, 224 N. Y. 30; *Matter of Zirpola* v. *Casselman,
Inc.*, 237 N. Y. 367; *Southern Pacific Co.* v. *Jensen*, 244
U. S. 205; *Grant Smith-Porter Ship Co.* v. *Rohde*, 257
U. S. 469; *State Ind. Comm.* v. *Nordenholt Co.*, 259 U. S.
263; *Washington* v. *Dawson & Co.*, 264 U. S. 219; *Miller's
Indemnity Underwriters* v. *Braud*, 270 U. S. 59; *Knicker-
bocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Alaska Packers
Assn.* v. *Ind. Acc. Commission*, 276 U. S. 467; *Sultan
Railway & Timber Co.* v. *Dept. of Labor & Industries*,
277 U. S. 135; *Spencer Kellogg & Sons* v. *Hicks*, 285 U. S.

502; *State Industrial Bd.* v. *Terry & Co.*, 273 U. S. 639; *Madderns* v. *Fox Film Corp.*, 205 App. Div. 791; 237 N. Y. 614.)

HUBBS, J. Claimant was injured by an explosion on a boat on which he was going to work. It is urged an award of compensation cannot be sustained because the maritime law applies.

In considering this case it is necessary to determine, first, whether it involves a contract matter or a tort matter and, secondly, if a contract matter, whether the contract was maritime in its nature. This is true because of the well-established rule enunciated by the Supreme Court of the United States.

" The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled." (*Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469, 476.)

If a tort matter be involved in this proceeding then since the accident occurred upon navigable waters, it would seem that admiralty would have jurisdiction. If it were a proceeding instituted against the shipowner for damages resulting from the explosion of the ship, without doubt a tort matter would be involved. It is not, however, such a proceeding. It is against the employer and is not instituted on the theory that a tort has been committed. As was said in *Matter of Doey* v. *Howland Co.* (224 N. Y. 30, 36), " an award under the Workmen's Compensation Law is not made on the theory that a tort has been committed; on the contrary, it is upon the theory that the statute giving the commission power to make an award is read into and becomes a part of the contract. (*Matter of Post* v. *Burger & Gohlke*, 216 N. Y. 544.) The contract of employment, by virtue of the statute, contains an implied provision that the employer, if the

employee be injured, will pay to him a certain sum to compensate for the injuries sustained, or if death results, a certain sum to dependents. These payments are made irrespective of whether or not the employer was guilty of wrong doing. It is a part of the compensation agreed to be paid for services rendered in the course of the employment." (Cf. *State Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263, 271.),

No recovery is sought against the employer in this case because of any wrong alleged to have been done by the employer. A recovery is sought as the result of injuries for which the statute, read into the contract, gives a right to recovery.

If the question of tort be not involved, then we are confronted with the question as to whether the contract of employment is maritime in its nature. The contract of employment was for the services of the claimant in the erection of a building. It was not a contract to do work upon a vessel in navigable waters nor even to do work remotely connected with any undertaking having to do with navigation or commerce. The presence of the claimant upon the boat was a mere incident of the contract of employment, it having been found as a fact that he was on the boat as an employee of the contractor against whom the award has been made.

Even though the part of the contract of employment which brought about his presence on the boat be deemed to make the contract of employment maritime in its nature, the subject remains local in character and the applicability of the State compensation law quite possibly might be upheld in a Federal court under the exception to the general rule as to the applicability of maritime law which permits the application of a State statute where so doing will not " work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in

its international and interstate relations." (259 U. S. 263, 274.)

The discussion of the general rules and exceptions thereto in *State Industrial Commission* v. *Nordenholt Corp.* (*supra*) is most illuminating and it seems to clearly point the way to the proper disposition of this case. The claimant was not a maritime worker. He was not engaged at the time he was injured directly or indirectly in any work having to do with commerce or navigation. While he was injured on a ship in navigable waters, he was not a passenger in the general sense of the word and this proceeding is not instituted on the theory of any contract for carriage between himself and the owner of the ship. Though he paid his fare it may be assumed that his compensation for the work in which he was engaged was so adjusted as indirectly to reimburse him for that expenditure. The contract of carriage was not made primarily for his benefit but under a requirement of the main contract of his employer for the transportation of his employees. By upholding the applicability of the Workmen's Compensation Law (Cons. Laws, ch. 67) under the facts in this case, no material prejudice can result to the characteristic features of the general maritime law. No effect will be had upon the established rules as to the applicability of maritime jurisdiction to questions arising between passengers and shipowners or maritime workers and the owners of ships or other employers engaged in maritime work. The matter is as much one of local concern as if the employee had been injured while at work on the building on the island. To permit claimant to succeed, it is not necessary to find any wrongdoing on the part of his employer, so that the question of the proper or improper operation of the ship is not involved. It is not necessary to rely upon any provision of the contract of carriage.

In *La Casse* v. *Great Lakes Engineering Works* (242 Mich. 454) the court said:

" 3. If an injury occurs on navigable waters and *in the performance of a maritime contract, it is certainly* within the exclusive jurisdiction of admiralty unless —

" (a) the contract is of merely local concern, and

" (b) its performance has no direct effect upon navigation or commerce, and

" (c) the application of the State law ' would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.'

" 4. State workmen's compensation laws, contractual in character, are applicable to maritime service on navigable waters when, and only when, the service is within exceptions (a), (b) and (c) above.

" 5. If, however, the injury occurs on navigable waters, but *in the performance* of a non-maritime contract, it is, at least *prima facie*, local and within the operation of State laws. If there are any exceptions to this rule, they are yet to be developed " (p. 462).

This court, in *Matter of Doey* v. *Howland Co.* (*supra*, p. 35), a proceeding under the Workmen's Compensation Law, where an employee of a company was killed while making repairs to a ship of which it was not the owner, said: " Was Doey, at the time of his death, engaged in the performance of a maritime contract * * *. In determining whether a contract be of a maritime nature, locality is not controlling, since the true test is the subject-matter of the contract — the nature and character of the work to be done."

While the injury to the claimant Heaney occurred on navigable water, he was not at the time engaged in the performance of a maritime contract. He was engaged in the performance of a contract non-maritime in its nature and the recovery sought is " a part of the compensation agreed to be paid for the services rendered in the course of the employment."

If the action were for wages due under the contract of employment, the Federal court would not have jurisdiction. Jurisdiction is not conferred upon that court because another part of the agreed compensation is sought to be recovered or because there chances to be an independent. contract for passage with a third party or a tort liability on the part of the third party.

With this view of the applicable rule we may consider the cases which might appear to establish a contrary rule.

The first of these is *Spencer Kellogg & Sons, Inc.,* v. *Hicks* (285 U. S. 502, 512, 514). The workmen, employees of Kellogg & Sons, in the manufacture of linseed oil at Edgewater, New Jersey, lived in New York. In order to ferry them to and from the factory, the company owned and operated the *Linseed King*, a gasoline launch. Those killed and injured were of three classes, regular employees of Kellogg & Son in the Edgewater plant, men who had applied for work in discharging the cargo of a ship the preceding day but who had been advised to report again on the morning of the accident, and men seeking employment in answer to an advertisement. The court there held the compensation statute of the State of New Jersey inapplicable on the ground that it was incapable of enforcement by the ordinary process of any court and " is not saved to suitors from the grant of exclusive jurisdiction to the Courts of the United States of all civil cases of admiralty and maritime jurisdiction." The court said: " Kellogg & Sons undertook the interstate carriage of passengers by water on a launch operated by its servants. This was a maritime matter. The ferriage was for the facilitation of the company's business and for its convenience as well as that of the employees. The injury to the passengers resulted from negligence of the company's agent in the navigation of the launch. It was a maritime tort. The rights and obligations of the parties depended on and arose out of the maritime law. A proceeding to impose liability for such a tort is a cause in admiralty   *   *   *."

The court further said: "Kellogg & Sons sustained toward employees injured or killed the dual relationship of a carrier by water and a general employer at its Edgewater plant."

In that case the employer was the owner of the boat, undertook the interstate carriage of passengers by water on a launch operated by its servants, sustained a dual relationship to its employees of a carrier by water and a general employer, and was guilty of a maritime tort. None of these things are present in the instant case. Here, since the employer was not a carrier of passengers by water, it was not guilty of a maritime tort and the proceeding is not one to "impose liability for such a tort" as the proceeding in the *Kellogg* case was held to be.

In *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149) the employee for whose death compensation was asked was employed as a barge man and was doing work of a maritime nature. There the very fact that the employee was employed as a barge man and that it was found that he was doing work of a maritime nature distinguishes that case from the one at bar.

In *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) the deceased employee was engaged in driving a small electric freight truck into the steamship *El Oriente* where it was loaded with cargo, then driving the truck out of the vessel upon a gangway, connecting the vessel with pier 49, North river, and thence upon the pier where the lumber was unloaded from the truck. He jammed his head between the lumber and the ship, thereby breaking his neck. Compensation was awarded under the New York State statute. The court said that the work of a stevedore in which the deceased was engaged was maritime in its nature, his employment was a maritime contract and that the injuries which he received were likewise maritime. This statement of the holding of the court makes it evident that the employee there was engaged in maritime work and that the case is not authority for holding claimant in this case not entitled to compensation.

The fact that by section 29 of the Workmen's Compensation Law the claim of an employee against a third party for tort is assigned to the carrier paying an award or the further fact that the same statute provides for assignment of a cause of action based upon a payment into the State fund in a case where a person is killed through negligence does not bar this proceeding. The right to compensation is not dependent upon the existence of a claim or cause of action against a third party. No liability on the part of the third party is created by the statute. The effect of the statute is not to guarantee collection of damages as a result of the assignment. The assigned cause may be valueless as a result of contributory negligence on the part of the injured employee (*Liberty Mutual Ins. Co.* v. *Colon & Co.*, 260 N. Y. 305), inability of the assignee to establish negligence on the part of the third person (*Liberty Mutual Ins. Co.* v. *Colon & Co.*, *supra*), financial irresponsibility of the third person, or that conduct tortious under the law of the forum where the compensation contract is enforceable is not tortious under the law of the forum where the accident occurred. (*Travelers Ins. Co.* v. *Central R. R. Co.*, 143 Misc. Rep. 589.)

Why should it be held that the contract right is rendered unenforceable as between the parties thereto for the reason that there exists incapacity on the part of the assignee of the cause of action, based upon the possible tort liability of a third person to maintain an action thereon? To do so would defeat the main purpose of the compensation contract of which the provision for assignment is a mere incident. Regardless of the enforceability of the assigned cause, the employee parts with a valuable right. That it may prove of no value in the hands of the assignee is a matter over which the injured employee has no control.

The order should be affirmed, with costs.

A question under the Federal Constitution was presented and necessarily passed upon by this court. It

relates to the exclusive jurisdiction of the Federal courts over admiralty cases. The claimant was injured by the explosion of a passenger steamer on the East river, New York. This court held that the Workmen's Compensation Law of the State applied, and that the Federal courts had not exclusive jurisdiction to afford relief.

CRANE, Ch. J. (dissenting). In September of 1932 the P. J. Carlin Construction Company, of 405 Madison avenue, New York city, had a contract with the city of New York for the construction work on Riker's Island, State of New York. The island is owned by the city of New York and used for a penal institution — a penitentiary — and the building operations consisted of the erecting and equipping another penitentiary building and a power house. The island was a mile or two from the shore, the municipality running a ferry which was used almost entirely for transporting prisoners. It was necessary for the Carlin Company to provide transportation facilities for its workmen, as its contract contained this provision: "Each Contractor shall investigate the existing means of transportation to and from Rikers Island. The City shall not be held responsible for providing regular ferry service. The Contractor must assume responsibility for the transportation from Mainland to island of men and materials for all work done under this contract."

The Carlin Company made arrangements with one George I. Forsythe, the owner of a steamboat, for this transportation. The steamer was called the *Observation* and was capable of carrying two hundred and fifty passengers. It was not used exclusively for Carlin's men. Carlin's arrangement with Forsythe was embodied in a letter, June 26, 1931, and orally accepted by Captain Forsythe. In part it reads as follows: "You are to operate the Steamer '*Observation*,' which is warranted by you to be officially rated at 250 capacity by local

steamboat inspectors, Custom House, N. Y., full crewed, full covered with adequate public liability and workmen's compensation insurance, upon a schedule furnished to you by our Field Office, and calling for operation five days in the week only, from Monday to Friday inclusive.

" You are to be compensated therefor by collecting fares from the men at the rate of 10c a round trip. In the event that your fares do not reach the sum of $60.00 upon any given day, we shall reimburse you for the difference. * * *

" We understand that your boat is warranted to be in first class condition, with all necessary permits to operate in this service."

The claimant Edward Heaney, who resided in the city of New York, was one of Carlin's workmen, and on the 9th day of September, 1932, boarded the steamboat *Observation* at One Hundred and Thirty-sixth street for the purpose of going to work on Riker's Island. While the steamboat was in operation and en route to the island, there was a terrific explosion — it was blown to bits, many passengers losing their lives, and this claimant, with others, being injured.

An award has been made to Heaney under the Workmen's Compensation Law of this State which has been unanimously affirmed by the Appellate Division, an appeal being allowed by this court. The Commission made this finding: " At the time Edward Heaney sustained the accidental injuries herein above referred to, the status of the claimant and the employer herein was a matter of local concern, was subject to the regulation of the State and in no way worked prejudice to any characteristic feature of the General Maritime Law." Although this is stated as a finding of fact it is a conclusion of law drawn from the facts, with which we cannot agree.

That the explosion of a passenger steamer while in operation upon the seas, or, to be more exact, the East river as it opens into Long Island sound, was a maritime

matter or maritime tort is self evident. That Heaney would have an action in admiralty against the steamer for any negligence causing the explosion or for any unseaworthiness must be admitted. Such action would also lie in admiralty or at common law against the owner. Although most of the cases in the books deal with sailors or workmen on ships, maritime law applies as well to passengers. (1 Benedict on Admiralty [5th ed.], pp. 99, 100; *The Moses Taylor*, 71 U. S. [4 Wall.] 411; *Chicago D. & G. B. Transit Co.* v. *Moore*, 259 Fed. Rep. 490; certiorari denied, 251 U. S. 553.) To determine, therefore, whether the explosion of a passenger steamer at sea is a matter of local concern so that the application of our Workmen's Compensation Law will not prejudice the characteristic features of the maritime law or its uniformity of application, we must start with this conceded fact: that Heaney was injured in a maritime tort and, if there be negligence, has a cause of action against the ship or the owner in admiralty. In other words, if there be any wrong or any cause of action, admiralty has jurisdiction of it, preserving to the States any common law remedy, which of course does not include the Workmen's Compensation Law. (*Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.)

What is the effect of our Workmen's Compensation Law upon the remedy in admiralty? By section 29 of our Workmen's Compensation Law when the employee accepts compensation his cause of action is assigned to the insurance carrier. This is a modification of all rights existing at common law. No tort action could be assigned. But we go further, for the cause of action which passes to the insurance company is prosecuted not on the basis of subrogation solely, but for the benefit of the insurance carrier. (*Tracy* v. *American Mutual Liability Ins. Co.*, 266 N. Y. 536, decided January 24, 1935; cf. *Zurich G. A. & L. Ins. Co.* v. *Childs Co.*, 253 N. Y. 324, 329; *Travelers Ins. Co.* v. *Brass Goods Mfg. Co.*, 239 N. Y. 273.)

A new cause of action is also created by the New York statute which never before existed either at common law or in admiralty. By section 15 it is provided that the insurance carrier shall pay the sum of one thousand dollars into certain special funds in every case in which the person killed through negligence shall have left no person entitled to compensation. For this amount thus paid the insurance carrier is given a cause of action against the negligent third party. We held in *Phœnix Ind. Co.* v. *Staten Island R. T. Ry. Co.* (251 N. Y. 127) that the same result followed when the widow or next of kin settled with the third party for more than would have been paid under the Workmen's Compensation Law. In such a case the insurance carrier may recover from the third party an additional one thousand dollars which he has been obliged to pay into the State treasury.

Admiralty recognizes no such causes of action. They are peculiar to New York State and may vary with the enactments of every State Legislature. True, these provisions are not applicable here for the reason that Heaney is alive, not dead, but we are dealing with the application or the possible application of the Workmen's Compensation Law to an admiralty tort wherein a passenger on a steamer has been injured or killed. The very nature of the remedy provided by this State legislation shows on its face that it seeks to supplement or add to the admiralty law when a cause of action assigned to an insurance carrier is attempted to be prosecuted in admiralty. In *Travelers' Ins. Co.* v. *Prince Line, Ltd.* (262 Fed. Rep. 841), a District Court decision, MAYER, J., held that admiralty would not recognize the assignability of a tort action, and that our Workmen's Compensation Law did not apply to admiralty torts. In *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149) it was held that the provisions of section 9 of the Judiciary Act of 1789 (1 U. S. Stat. 76, 77) granting to the United States District Courts exclusive original cognizance of all civil causes of

admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common law remedy, referred to remedies for the enforcement of the Federal maritime law. It conferred no substantive rights and did not authorize the States so to do. Our Workmen's Compensation Law does confer substantive rights. It gives to the insurance carrier a right to recover full damages when it has only paid out part, and also to recover on an entirely new cause of action for moneys contributed to State funds.

Whether Heaney has a cause of action for negligence in admiralty is beside the point. This all depends upon evidence as to the nature of the explosion. The fact remains that the explosion on this ship at sea was a matter of maritime jurisdiction, the common law remedies being preserved. Heaney has no claim, therefore, under the Workmen's Compensation Law of the State.

The United States Supreme Court, in *Spencer Kellogg & Sons, Inc.*, v. *Hicks* (285 U. S. 502), had a case similar in facts and in my judgment exactly the same in principle. In that case the employer chartered the ship and it was held that his workmen, while being transported on navigable waters, should receive an award in admiralty but no award under the State compensation law. Like Heaney here, these employees were passengers. The fact that the employer in that case was the charterer or owner of the boat, became important and was emphasized by reason of an application made by it to limit liability to the value of the boat as permitted under Federal statute. It had nothing to do with shifting or changing the principle that passengers being transported at sea or on navigable waters by a steamer are subject to admiralty jurisdiction. The court said: " Kellogg & Sons undertook the interstate carriage of passengers by water on a launch operated by its servants. This was a maritime matter. The ferriage was for the facilitation of the company's business and for its convenience as well as that of the employees. The injury to the passen-

gers resulted from negligence of the company's agents in the navigation of the launch. It was a maritime tort. The rights and obligations of the parties depended on and arose out of the maritime law. A proceeding to impose liability for such a tort is a cause in admiralty within the meaning of Article III, Sec. 2 of the Constitution, triable in the United States courts sitting in admiralty " (p. 512).

If the rights and obligations of Heaney and Forsythe, the owner of the *Observation* which blew up, depend upon and arise out of the maritime law, what becomes of those provisions of our State law which assign Heaney's cause of action to an insurance carrier and may in a proper case give the insurance carrier a claim against Forsythe for a thousand dollars contribution to a State fund? Heaney's remedy is solely in admiralty or at common law as our Workmen's Compensation Law does not apply to this unfortunate occurrence.

The authorities relied upon by the respondents, such as *Millers' Ind. Underwriters* v. *Braud* (270 U. S. 59); *Sultan Ry. & T. Co.* v. *Dept. of Labor & Industries* (277 U. S. 135), and *State Industrial Board* v. *Terry & Tench Co., Inc.* (273 U. S. 639 [240 N. Y. 292]), are not applicable as the work out of which the injury grew in those cases was so closely identified with the land that it had very little to do with transportation on navigable waters or with the safety or operation of ships. Admiralty, on the other hand, has always been solicitous of the sea-worthiness and proper equipment of passenger craft both in behalf of passenger and seaman.

Since writing the above there has come to my attention the case of *Kenward* v. *The " Admiral Peoples "* (295 U. S. 649), decided June 3, 1935, by the United States Supreme Court, in which the Chief Justice wrote the opinion. A passenger on a steamboat while disembarking at Portland was injured by falling from a gangplank leading from the vessel to the dock. The vessel was

liable, and the question of jurisdiction arose. The Chief Justice said: " This is one of the border cases involving the close distinctions which from time to time are necessary in applying the principles governing the admiralty jurisdiction. That jurisdiction in cases of tort depends upon the locality of the injury. It does not extend to injuries caused by a vessel to persons or property on the land. Where the cause of action arises upon the land, the state law is applicable " (citing cases).

" The basic fact in the instant case is that the gangplank was a part of the vessel. It was a part of the vessel's equipment which was placed in position to enable its passengers to reach the shore."

The order of the Appellate Division and that of the Industrial Board should be reversed and the claim dismissed, with costs in all courts.

CROUCH, LOUGHRAN and FINCH, JJ., concur with HUBBS, J.; CRANE, Ch. J., dissents in opinion in which O'BRIEN, J., concurs, and LEHMAN, J., dissents also.

Order affirmed.